# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 2:06CR00010 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **THOMAS WALLY HAYES**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Paul G. Whetstone, Morristown, Tennessee, for Defendant.*

The issue raised in this criminal case is whether there is a sufficient basis to allow the defendant to interview the trial jurors who found him guilty in an attempt to impeach their verdict. I find that there is an insufficient showing to support any contention that an outside influence tainted the jury's verdict. Accordingly, I will deny the defendant's motion seeking leave to interview the jurors.

I

The defendant, Thomas Wally Hayes, was convicted by a jury of conspiring to possess with intent to distribute and conspiring to distribute oxycodone, a controlled substance. 21 U.S.C.A. §§ 846, 841(b)(1)(C) (West 1999 & Supp. 2006). He has filed a post-verdict Motion for Permission to Interview Jurors in which he asserts that

it is necessary "to ascertain the facts and circumstances underscoring [the jurors] conduct and deliberations in connection with the very surprising "Guilty" verdict they returned against [the defendant]." (Def.'s Br. at 5.) The motion has been briefed and is ripe for a decision.[1]

The circumstances surrounding the request for permission to interview the members of the trial jury are as follows.

During the first day of the trial, the government presented evidence from three cooperating witnesses. Each witness testified that he had either participated in a conspiracy to distribute oxycodone with the defendant or had witnessed the defendant distribute oxycodone. At the conclusion of the first day of testimony, the government rested its case.

On the second day, before the trial reconvened, the court alerted counsel that a note had been passed to a deputy clerk by one of the alternate jurors when he had arrived for service that morning. The note read: "If you want to know what happened: then follow the money! (at $2,000/week to sustain an Oxycontin addiction adds up to a lot of money 2000 x 52 = $104,000/year)."

---

[1] Although the government has not responded to the motion, I will dispense with oral argument. The facts and legal contentions are adequately presented in the materials before the court and any argument by counsel would not significantly aid in the decisional process.

-2-

The alternate juror was questioned in chambers by the court regarding whether he had discussed the note, its contents, or any other matter relating to the evidence with other members of the jury. The juror confirmed that he had not.

Defense counsel requested that the alternate juror be dismissed. The government objected on the ground that the juror did not appear to have done anything improper by simply passing the note to the deputy clerk. In chambers, the juror had given assurances that he had not discussed the content of the note with the other members of the jury nor would he do so during the trial. However, after confirming the defendant's desire to have the alternate juror excused, the court agreed to do so, and the alternate was dismissed.

The parties were then advised of another incident concerning the jury. While waiting for court to convene that same day, a deputy clerk went into the jury room to make a pot of coffee for the jurors. The deputy clerk reported that while in the room with the jurors she overheard two unidentified female jurors possibly discussing matters relating to the case. The clerk believed that they were discussing Oxycontin, and the word "Mafia" was mentioned by one of the women. The deputy clerk had not been assigned to the courtroom during the trial and knew little about the background of the case. She did not inquire about the conversation and left the room immediately. Although she was not certain about the context of the conversation, she

nonetheless alerted the court. There was no indication of what was specifically being discussed, by whom it was being discussed, or whether it was related to the case.

After notifying the parties of the conversation the deputy clerk overheard, the court advised counsel that the jury would again be instructed not to discuss the case until after final jury instructions were given to them and they were told to begin deliberating.[2] Neither the defendant nor the government raised any objections to such an instruction. Suggestions were also solicited by the court from counsel regarding how to proceed in light of this disclosure from the deputy clerk. There was no request to question members of the jury about the conversation or give any further curative instruction. The defendant did not move for a mistrial or request any other relief. The trial continued and concluded without any further incidents from the jury.

During closing arguments, the government argued that the defendant was at the "top of the food chain" compared to the cooperating witnesses, who were admitted

---

[2] When the jury returned to the courtroom, the court instructed the jury as follows:

> Let me remind you that you should not discuss this case among yourselves until that final time when you go to the jury room to decide your verdict. In other words, it's important that you hear all the evidence, and hear all the lawyer's arguments, and also hear my instructions to you about what the law is, and the law you have to follow before you discuss the case. So, please keep that in mind.

A similar instruction had been given at the beginning of the trial.

-4-

drug addicts, because the defendant was not addicted to prescription drugs and sold the drugs solely for profit.

II

The defendant asserts that the facts give rise to an inference that jury misconduct occurred in this case and that he be given an opportunity to interview all jurors to explore the extent of such alleged misconduct in order to impeach their verdict. The defendant asserts that these facts show that the jury improperly concluded that he was a member of an "organized criminal syndicate." (Def.'s Br. at 4.)

First, the defendant points to the conversation overheard by the deputy clerk in which the words "Oxycontin" and "Mafia" were apparently used by two female jurors. The defendant claims that this conversation coupled with his physical appearance[3] gives rise to an inference that certain jurors improperly concluded he was a member of the Mafia.

---

[3] In the present motion, counsel for the defendant describes his client's physical appearance in the following manner:

> [He] stood some six feet four inches tall and weighed 270 pounds. He had a coil of dark hair atop his massive head resembling a coiled mound [sic] Capellini. His complexion was olive and his countenance was calm, silent and expressionless. Indeed, he well fit the stereotypical Wiseguy, though he most certainly is no such character.

(Def.'s Br. at 2.)

-5-
Case 2:06-cr-00010-JPJ   Document 167-1   Filed 02/15/07   Page 5 of 9   Pageid#: 508

Furthermore, the defendant claims that the government subtly capitalized on this perception during closing arguments by arguing that he was at "the top of the food chain," and that the combination of these factors were "at the very least presumptively prejudicial to time-honored notions of fairness and due process of law." ( Def.'s Br. at 3.)

Aside from blaming the government for the alleged prejudice his client has suffered, defense counsel also faults the media, "which has glorified Mafiosi for over a half century" by popularizing "[f]ictional anti-heros the likes of Vito Corleone and Tony Soprano" in an attempt to "feed upon an insatiable American appetite for violence." (Def.'s Br. at 2.)

Although the defendant's arguments are imaginative, they find no support in law and lack any merit. Although he does not directly say so, the court can only assume that he seeks to interview jurors in an attempt to ascertain "whether any outside influence was brought to bear upon any juror," which is a condition to any testimony by a juror upon an inquiry into the validity of a verdict. *See* Fed. R. Evid. 606(b).

Post-trial requests to contact jurors in order to impeach their verdicts are disfavored. *See United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988). However, such requests may be granted where the movant has made a "threshold showing of improper outside influence." *Id*. In order to meet this threshold, there

must be "persuasive, credible evidence of an improper outside influence on the jury's deliberations." *United States v. Porter*, 67 Fed. App'x 832, 833 (4th Cir. 2003) (unpublished); *see also United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) (stating that post-trial hearing to impeach a verdict should occur only "when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of the defendant." (citation omitted)).

The defendant has failed to advance any persuasive and credible evidence of an improper outside influence. There was never any indication that the conversation dealt with the defendant or any of the evidence presented at trial. Although this conversation overheard by the deputy clerk provided some cause for concern, this matter was brought promptly to the attention of the parties. The defendant raised no contemporaneous objection to this conversation; he made no request that the court interview members of the jury to ascertain the substance of the conversation or whether an outside influence was at play; he made no request that a curative instruction be given; and he did not move for a mistrial.

However, out of an abundance of caution, the court reminded the jurors of the importance of waiting until they began deliberations to discuss the case. The court found no evidence that this conversation indicated that some jurors had prejudged the case or that those jurors held any prejudice against the defendant.

Trial judges have long been afforded broad discretion in determining the amount of inquiry necessary, if any, when dealing with possible jury misconduct. Such deference exists because "the trial judge is in the best position to determine the nature and extent of alleged jury misconduct." *United States v. Griffith*, 17 F.3d 865, 880 (6th Cir. 1994) (internal quotation omitted).

The defendant asserts that the conversation taken in conjunction with his physical appearance, the media's portrayal of Mafia figures, and the government's statement that he was at the "top of the food chain" were "presumptively prejudicial" and justifies his request to interview jurors. (Def.'s Br. at 3.) This argument misconceives the requirements for a motion to interview jurors in order to impeach their verdict.

In order to succeed, the movant must show some improper outside influence was brought to bear on a juror. Extraneous prejudicial information in the form of newspaper articles and television news reports relating to the actual case before the jury or to the defendant on trial could be considered an outside influence. *See Holmes v. United States*, 284 F.2d 716 (4th Cir. 1960). The widespread depiction of the Mafia in film and on television does not constitute such an outside influence in this case, even assuming, as defense counsel argues, that his client fits the stereotypical appearance of an organized crime figure. Additionally, it would be highly speculative to argue that any juror imputed the negative characteristics of such figures, as

depicted by the media, to the particular defendant in this case because of his physical appearance.

The defendant has failed to make the requisite threshold showing that an improper outside influence was brought to bear on any juror. Accordingly, I will deny the defendant's request to interview jurors.

III

For the reasons stated, it is **ORDERED** that the defendant's Motion to Interview Jurors is Denied.

ENTER: February 21, 2007

/s/ JAMES P. JONES
Chief United States District Judge