# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 2:06CR00010 |
| v. | ) | Case No. 2:07CR00008 |
| | ) | |
| | ) | **OPINION** |
| **THOMAS W. HAYES,** | ) | |
| | ) | By: James P. Jones |
| Defendant. | ) | United States District Judge |
| | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Thomas W. Hayes, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2010). He alleges that the judgment against him must be vacated based on claims of ineffective assistance of counsel at his trial, sentencing, supervised release revocation proceedings,[1] and on

---

[1]  Although the defendant only included Case No. 2:06CR00010 on his § 2255 pleadings, he is also challenging the validity of the judgment in Case No. 2:07CR00008. In that case, I presided over supervised release revocation proceedings relating to the defendant's prior federal conviction in the United States District Court for the Eastern District of Tennessee. Because he is challenging two separate judgments in this § 2255 action, I will direct the clerk to docket the § 2255 motion in Case No. 2:07CR00008 and to open a second § 2255 action in that case. I will also consolidate the two § 2255 cases for disposition.

appeal. Upon review of the record, I find that the defendant is not entitled to relief under § 2255.

I

A grand jury of this court returned an Indictment on March 21, 2006, charging that Thomas Wally Hayes, along with codefendants Darryl Asher and Randall Middleton, conspired between September 2003 and August 2004 to possess with intent to distribute and to distribute oxycodone, in violation of 21 U.S.C.A. §§ 841(b)(1)(C) and 846 (West 1999 & Supp. 2010). Asher and Middleton both pleaded guilty, but Hayes proceeded to trial.

At trial, Middleton and his son, Wesley Middleton, testified that after being prescribed oxycodone for pain, they became addicted and began abusing the drug. Looking for sources of the drug, for their own use and to sell, they found Darryl Asher, who then made regular sales of oxycodone to both Middletons. Asher had large prescriptions for the drug, but testified that most of the pills he sold to the Middletons he obtained from Hayes' ex-wife, Carol Rouse, and later, from Hayes himself. The Middletons also testified that Asher referred to Hayes as one of his sources for oxycodone.

Randall Middleton testified that on two occasions, he purchased oxycodone from Hayes when Asher was not available — once from Hayes directly and once through another man named Ricky Coffee, who then met with Hayes and came back to Middleton with the drugs. Wesley Middleton testified that he was also present at this latter transaction, saw Coffee give Hayes the money, and saw Hayes pour pills out of a bottle to give to Coffee, who then gave the pills to the Middletons. After a two-day jury trial in January 2007, the jury found Hayes guilty of conspiracy as charged.

During the sentencing hearing on May 31, 2007, Hayes testified that he was innocent of the charges. He denied that he had ever seen the Middletons on his property and stated that he had never talked to them until, after his arrest, he was transported with them from the jail to the courthouse.

The Presentence Investigation Report ("PSR") calculated that Hayes should be held accountable for 658.88 grams of oxycodone, which gave him a Base Offense Level of 34. His criminal history points gave him a Criminal History Category of IV, resulting in a sentencing range of 210 to 240 months. Hayes' prior drug felony convictions, however, also qualified him as a Career Offender, with a Base Offense Level of 32 and Criminal History Category VI, resulting in a sentencing range of 210

to 240 months.[2]  I sentenced Hayes to a term of 240 months imprisonment, a $2500 fine, and a six-year term of supervised release.[3]

Hayes appealed the judgment in Case No. 2:06CR00010, arguing that the evidence, which consisted of witness testimony, was insufficient to support his conviction; that the court erred in denying his motion for new trial; and that the court failed to adequately consider the factors set forth in 18 U.S.C.A. § 3553(a).  The United States Court of Appeals for the Fourth Circuit affirmed.  *United States v. Hayes*, 338 F. App'x 290 (4th Cir. 2009).

Hayes now alleges that he is entitled to relief under § 2255 on grounds that counsel provided ineffective assistance in various respects.  The government has filed

---

[2]  The probation officer erred in the PSR, taking the higher Base Offense Level of 34, based on drug amount, and the Career Offender Criminal History Category of VI, resulting in a sentencing range of 262 to 327 months, capped by the statutory maximum sentence of twenty years, rendering an advisory guideline sentence of 240 months.  At the sentencing hearing, however, the probation officer acknowledged his calculation error and advised the court that under either the drug weight calculation or the Career Offender calculation, the sentencing range was the same: 210 to 240 months, with 240 months being the statutory maximum.

[3]  Although the court was prepared to conduct revocation proceedings in Case No. 2:07CR00008 immediately following the sentencing hearing in Case No. 2:06CR00010, at that time, counsel moved to withdraw from representing Hayes in the revocation proceedings. I granted counsel's motion and rescheduled the revocation hearing for June 14, 2007. Ultimately, I found Hayes to be in violation of his supervised release conditions, by virtue of his criminal conviction in Case No. 2:06CR00010, and sentenced him to serve a consecutive sentence of 46 months on the revocation.

a Motion to Dismiss, and Hayes has responded, making the matter ripe for disposition.

## II

### A. Procedural Default.

The government argues that Hayes' claims are procedurally defaulted because he did not raise them on direct appeal. I must reject this argument. It is well established that a federal inmate may bring an ineffective assistance claim in § 2255 proceedings whether or not he could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also United States v. King,* 119 F.3d 290, 295 (4th Cir. 1997) (finding that claims of ineffective assistance of counsel should be raised in a § 2255 motion, and not on direct appeal, unless the appellate record conclusively shows that counsel was ineffective). Therefore, I find that Hayes' claims are not procedurally barred.

### B. Standard of Review.

The defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). If the court determines from review of the motion and the files and records of the case conclusively show "that under no circumstances could the [defendant]

establish facts warranting relief under § 2255," the defendant is not entitled to an evidentiary hearing, and the court may summarily dismiss the § 2255 motion. *Fontaine v. United States*, 411 U.S. 213, 215 (1973). An evidentiary hearing in a § 2255 case is warranted only when the existing record, including the affidavits and other submissions, contains material factual disputes. *Id.* For the reasons herein stated, I find that the existing record conclusively shows that Hayes is not entitled to relief under § 2255.

### C. Claims of Ineffective Assistance at Trial.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.*

at 694-95. If it is clear that the defendant has not satisfied one prong of the *Strickland* test, the court need not inquire whether he has satisfied the other prong. *Strickland*, 466 U.S. at 697.

1. Jury Selection Process.

Hayes asserts that the petit jury seated to hear his case was comprised entirely of Caucasians, although minorities were available.[4] Hayes himself is Caucasian, but nevertheless asserts that counsel should have objected to the systematic exclusion of minorities from jury service as grounds for a motion to dismiss the indictment.[5]

> In order to establish a prima facie violation of the [Sixth Amendment] fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) (finding that fair-cross-section requirement was violated by state statute barring women, in most cases, from jury service, although judicial district population

---

[4] In his response to the motion to dismiss, Hayes states that data for Big Stone Gap from the 2000 Census indicated that the minority population was just under seven percent and that 76.8 percent of the population was eligible to vote. In support of his initial § 2255 motion, however, Hayes offered no such data.

[5] Although his allegations are sparse, it is clear from the cases Hayes cites that he is challenging the process of selecting the jury venire, rather than the process of selecting the petit jury.

was 53 percent female). The fair cross-section requirement does not give a defendant the right to a petit jury that mirrors the proportion of distinctive groups within the community. *Id.* at 538.

Hayes fails to allege any facts on which counsel could have challenged the selection process by which the jury venire in his case was chosen from the community. Indeed, he does not even state what this process entails or any particular minority group that the process allegedly excludes. As he has no constitutional right to a petit jury with the same proportion of minority and majority groups as the Big Stone Gap district, the mere fact that the venire summoned for his case or the petit jury actually selected to hear the case did not include any group other than Caucasians like himself was not sufficient grounds on which to object to the venire selection process itself. Hayes thus fails to allege facts demonstrating that counsel's failure to object to the jury selection process was either deficient performance or prejudicial to his defense under *Strickland*. I will grant the Motion to Dismiss as to this claim.

2. Juror Misconduct.

District courts have broad discretion in choosing how to address allegations of juror bias or misconduct when the allegations involve internal misconduct such as premature deliberations. *United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988) (affirming district court's denial of post-trial motion to interview jurors

because evidence did not indicate any external influence); *United States v. Resko*, 3 F.3d 684, 690 (3rd Cir. 1993) ("when there are premature deliberations among jurors with no allegations of external influence on the jury, the proper process for jury decisionmaking has been violated, but there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial."); *Grooms v. Wainwright*, 610 F.2d 344, 347 (5th Cir. 1980) (finding denial of juror interrogation during trial where alleged prejudice results from jurors' own statements with no evidence of outside influence); *United States v. Cuthel*, 903 F.2d 1381, 1382 (11th Cir. 1990) (finding that district court has discretion to determine whether evidence of premature deliberation warrants evidentiary hearing).

After the jury found Hayes guilty, defense counsel moved for permission to interview jurors about two incidents of alleged juror misconduct. I described and discussed these incidents in detail in an Opinion and Order denying the post trial motion. *United States v. Hayes*, Case No. 2:06CR00010, 2007 WL 527660, at *1-2 (W.D. Va. Feb. 15, 2007). I found no evidence of improper outside influence and no indication that the juror conversation in question involved Hayes or the trial evidence. I also "found no evidence that this conversation indicated that some jurors had prejudged the case or that those jurors held any prejudice against the defendant." *Id.* at * 3.

Claim 2 of the § 2255 motion avers that counsel was ineffective in failing to address the second of the two incidents of alleged juror misconduct during trial. I find no reason to change my previous factual findings about the juror incidents in this case. Hayes offers no additional evidence here, suggesting that jurors who decided his case were exposed to improper outside influences, that they had prejudged the evidence, or that they had any personal prejudice against Hayes. Thus, he fails to demonstrate that counsel had factual support on which to move for questioning of jurors, for dismissal of any juror for cause, or for mistrial.[6] I cannot find that counsel's failure to bring an unsupported motion qualifies as deficient or prejudicial

---

[6] During the sentencing hearing, Hayes admitted that he and counsel had discussed moving for a mistrial after the second juror incident and decided against it:

COUNSEL:     And you also recall, do you not, when the jurors were overheard discussing mafia, and oxycodone or OxyContin we made a decision not to move for mistrial?

HAYES:       Yes.

COUNSEL:     And of course in hindsight we certainly wish we had, but based upon how the trial was going, do you stand by that decision?

HAYES:       Yes.

(Sent. Tr. 41-42, May 31, 2007.)

representation under *Strickland*.[7]  Therefore, I will grant the government's motion as to Claim 2.

3.  Expert Witness.

Defense counsel attempted to qualify a pharmacist as an expert on Oxycodone, to testify that Asher's prescriptive dosages of Oxycodone were abnormally high, compared to the average dose of the drug, in support of an argument that Asher likely had plenty of his own pills to sell without obtaining pills from Hayes.  Counsel also attempted to question the pharmacist about the adverse effect Oxycodone use has on a user's memory.  I excluded the pharmacist's testimony on these subjects, because this professional did not have any expertise on the medical condition for which the doctor prescribed Oxycodone to Asher and or on the effects of the drug.

_____

[7]  Hayes asserts that my prior opinion recognized counsel's ineffectiveness with respect to the juror issues:

> Neither the defendant nor the government raised any objections to such an instruction. Suggestions were also solicited by the court from counsel regarding how to proceed in light of this disclosure from the deputy clerk. There was no request to question members of the jury about the conversation or give any further curative instruction. The defendant did not move for a mistrial or request any other relief.

*Hayes*, 2007 WL 527660 at *2.  This recitation of procedural fact, however, does not equate with a finding that counsel's omissions constituted professional errors that implicated Hayes' constitutional right to a fair trial.

In Claim 3 of the § 2255 motion, Hayes asserts that counsel should have obtained expert testimony from a physician to determine what Asher's prescriptions actually were, to show that Asher could not have ingested the entire amount of his prescription, leaving ample quantities for him to sell to others, and to inform the jury about the adverse effects of the drug on memory. He does not offer an affidavit from a physician stating any of this information, however. Thus, he fails to demonstrate that counsel could have procured such testimony or that it would have been favorable to his defense.

Moreover, the evidence presented to the jury included Asher's testimony that he sold some of his own pills. In addition, pharmacy records for Asher and his brother were entered into evidence, showing the dosage and quantity of pills prescribed and potentially available to Asher for his own use or sale.

Similarly, the testimony indicated that the witnesses who were oxycodone addicts had some memory lapses.[8] I also instructed the jury that they should view with caution the testimony of any witness who admitted using addictive drugs that might have impaired his or her memory concerning the events about which the

---

[8] Asher testified that after only ten months, he did not remember his own telephone number or Hayes' telephone number. Randall Middleton testified that he did not remember being charged with petty larceny and specific information from his plea agreement. He also did not remember the specific number of Oxycodone pills he was convicted of selling.

witness was testifying. Nevertheless, the jury found the witnesses sufficiently credible to support a verdict that Hayes was guilty.

Hayes thus fails to demonstrate a reasonable probability that a physician's testimony concerning appropriate prescription size and possible memory effects of oxycodone use would have resulted in a different verdict. His claim fails under *Strickland*, and accordingly, I will grant the Motion to Dismiss as to Claim 3.

4. Exculpatory Interview.

In arguing that Hayes was entitled to a new trial, counsel advised the court that before trial, he had interviewed Ricky Coffee, who allegedly volunteered to testify that it was he, not Hayes, who sold pills to the Middletons. Counsel took a recorded statement from Coffee and subpoenaed him for the trial, but Coffee "came up missing" and was not called as a witness. (Sent. Tr. 8, May 31, 2007.) Counsel inadvertently recorded over the Coffee interview, but was later able to subpoena Coffee again and interview him again. Counsel brought this second taped interview to the sentencing hearing and asked the court to consider the recording in support of Hayes' claim of factual innocence, because Coffee was now "unavailable" as a witness. I ruled that the recording was not new evidence, that it was hearsay, and that it would not be considered, but I did allow it to be made part of the record as a rejected exhibit.

Hayes asserts in Claim 4 that by destroying the first taped interview and failing to properly subpoena Coffee for trial, counsel "suppressed" exculpatory evidence regarding an "alibi" witness. He also asserts that counsel should have moved for permission to testify himself as a witness to the interview. Hayes' use of the term "alibi" apparently stems from his assertion that he and Coffee are similar in appearance. He claims that he elected to proceed to trial because counsel led him to believe that Coffee, a childhood acquaintance of his, would testify on his behalf.

Hayes fails to allege facts stating a claim of ineffective assistance here. First, he fails to forecast any evidence that Coffee actually would have testified at trial that he, not Hayes, sold pills to the Middletons. Had counsel moved during trial for admission of the taped interview of Coffee, or to testify himself regarding the contents of the interview, I would have denied his motion on hearsay grounds. *See* Fed. R. Evid. 803, 804(a).

Moreover, I find no reasonable probability that Coffee's testimony at trial would have resulted in a different outcome. Both of the Middletons testified that on the one occasion when Coffee was involved in a drug purchase, Coffee obtained the pills from a second individual on a tractor, whom they identified as Hayes. Thus, Coffee's testimony would not have provided Hayes with any sort of alibi; it would, at most, have contradicted the Middletons' description of who did what during that

drug purchase. Despite extensive other impeachment evidence offered, the jury found the government's witnesses sufficiently credible to support a finding that Hayes was guilty of conspiracy. Because Claim 4 fails under both prongs of *Strickland*, I will grant the Motion to Dismiss as to this claim.

5. Plea Negotiations.

In Claim 5, relying on photocopies of counsel's email correspondence with the government attorneys in Tennessee and Virginia, regarding his supervised release warrant and his drug conspiracy charges, respectively, Hayes asserts that (a) counsel misinformed him that he faced a potential penalty of two years if revoked and misinformed him that the prosecutor "was unwilling to forego jurisdiction to dispose of the warrant,"[9] when in fact, the prosecutor had agreed to ask for a concurrent sentence on the revocation in exchange for a guilty plea to the new criminal charges; (b) counsel failed to accurately convey plea agreement offers that would have allowed him to "definitively calculate the maximum amount of time he would have been required to serve"; and (c) counsel failed to investigate the alleged bias of the Court against binding plea agreements under Federal Rules of Criminal Procedure

---

[9] This "jurisdiction" aspect of Hayes' claim is unclear, but also irrelevant to the disposition of the claim as a whole, because for reasons stated below, Hayes fails to demonstrate prejudice under *Strickland*.

11(c)(1)(C).  I do not find that these allegations give rise to any constitutional claim under *Strickland*.

First, from Hayes' own submissions, it is clear that counsel made several email inquiries about obtaining a binding plea agreement under Rule 11(c)(1)(C).  The prosecutor responded that her office had a policy against offering such agreements and that she was not offering any such agreement.[10]  In the face of this evidence, Hayes cannot prove a reasonable probability that additional or different efforts from counsel would have resulted in a binding plea agreement offer under Rule 11(c)(1)(C).

Second, counsel's advice was not inaccurate when he allegedly told Hayes that the only plea bargain offered would subject Hayes to an "incalculable period of time" to serve.  While the prosecutor offered a plea agreement whereby the parties would stipulate to a drug weight no higher than a Base Offense Level of 34, such a stipulation would not have been binding on the court and so would not have definitively capped Hayes' sentencing exposure.

---

[10]  Hayes argues that decided cases in the district indicate that the prosecutor's representation about the department's policy on Rule 11(c)(1)(C) agreements and the court's unwillingness to accept them was not accurate.  The prosecutor in Hayes' case refused to consider a Rule 11(c)(1)(C) plea agreement, however, as was well within her discretion.  Accordingly, data regarding such plea agreements do not prove that counsel's decision not to pursue the issue further was either an unreasonable trial strategy or prejudicial.

Third, the email correspondence Hayes submits indicates that the government offered to request a concurrent sentence on the revocation only if Hayes agreed to plead guilty to the charges in Virginia.  Since Hayes offers no indication that he would have accepted a plea agreement that did not give him a definitive cap on his sentence exposure, his allegations fail to demonstrate any reasonable probability that but for counsel's alleged misinformation about the negotiations, the outcome in either Case No. 2:06CR00010 or 2:07CR00008 would have been different.  Claim 5 thus fails under the prejudice prong of *Strickland*, and I will grant the government's motion as to this claim.

6.  Sentencing Issues.

In Claim 6, Hayes asserts that the probation officer erred in finding him to be a Career Offender under U. S. Sentencing Guidelines Maunal ("USSG") § 4B1.1 and that counsel should have objected to this finding.  This claim has no merit.

I found at sentencing that Hayes was responsible for the drug weight stated in the PSR, giving him a Base Offense Level of 34, and that his Criminal History Category was IV, giving him a sentencing range of 210 to 240 months under the advisory guidelines.  These calculations are clearly indicated in the Statement of

Reasons on the court's docket and in the sentencing transcript,[11] and the sentence itself was upheld on appeal as reasonable. *Hayes*, 338 F. App'x at 293. Although Hayes qualified as a Career Offender for the reasons stated in the Motion to Dismiss, he was not sentenced as one. Thus, he cannot demonstrate any reasonable probability that counsel's failure to object to the Career Offender classification was deficient performance or prejudicial to the outcome at sentencing. I will grant the government's motion as to Claim 6.

7. Revocation Hearing.

In Claim 7, Hayes asserts that counsel was ineffective for failing to ensure that the court knew of its discretion to impose a concurrent sentence for the revocation. The government argues that this claim is timebarred, pursuant to § 2255(f), and in the alternative, that it is without merit. I agree on both counts.

Hayes did not file Claim 7 within one year of the date on which his revocation judgment in Case No. 2:07CR00008 became final. The judgment in that case was entered on June 14, 2007, and because Hayes did not appeal it, it became final on

---

[11] "[I] find the defendant has a total offense level of 34, criminal history category of four. That translates into a custody range of 210 to 240 months imprisonment." (Sent. Tr. 29-30, May 31, 2007.)

June 28, 2007.[12] He then had one year, until June 30, 2008, to file any § 2255 claims concerning that revocation judgment. Hayes signed and dated this § 2255 motion on December 11, 2009, nearly 18 months after the revocation judgment became final. Thus, Claim 7 is untimely filed under § 2255(f)(1). Hayes does not state any ground on which his filing period could be calculated under any other subsection of § 2255(f) or on which equitable tolling is warranted. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003). Accordingly, I will dismiss this claim as untimely filed.

In any event, I also find no merit to the claim. I am well aware of the parameters of the court's statutory authority to run sentences concurrent to each other. *See* 18 U.S.C.A. § 3584(a) (West 2000). Moreover, at the sentencing hearing on May 31, 2007, in Case No. 2:06CR00010, counsel asked the court to run the revocation sentence concurrent to the conspiracy sentence. On the other hand, the advisory sentencing guidelines expressly discourage imposition of concurrent sentences in such situations. *See* USSG § 7B1.3(f) ("Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served

---

[12] At the time the judgment was entered in this case in June of 2007, the Federal Rules of Appellate Procedure required a notice of appeal in a criminal case to be filed within ten business days after entry of the judgment. Pursuant to amendments effective December 1, 2009, Rule 4(b)(1) now requires that a notice of appeal be filed within 14 calendar days from entry of judgment.

consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."). Hayes offers no legal authority on which counsel could have argued for concurrent sentences, in light of § 7B1.3(f), and I find no justification under the advisory guidelines or the facts of Hayes' case for imposing concurrent sentences.

For the stated reasons, I will grant the government's motion as to Claim 7.

8. Counsel's Representation on Appeal.

In his last claim, Hayes asserts that appellate counsel should have raised on appeal all of the issues presented in Claims 1 through 7. Counsel has no duty to raise on appeal every issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Ineffective assistance for failing to appeal a given issue must be determined under the *Strickland* standard of deficient performance and resulting prejudice. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Counsel's failure to pursue a basis for appeal by reason of a mere miscalculation of the likelihood of success does not constitute constitutionally ineffective representation. *See United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (citing *Smith v. Murray*, 477 U.S. 527, 534-35 (1986)).

Hayes does not demonstrate that counsel's strategic decisions regarding which claims to raise on appeal were unreasonable. Moreover, he also fails to show a reasonable probability that any of these issues would have succeeded on appeal. Accordingly, I will grant the government's motion as to Claim 8.

III

For the reasons stated, I will grant the Motion to Dismiss and deny relief as to the defendant's § 2255 motion in each case. A Final Order will be entered herewith.

DATED: December 13, 2010

/s/ JAMES P. JONES
United States District Judge